UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

MIGUEL ENRIQUE DIAZ,

Plaintiff,

v.

ASSOCIATE WARDEN HURLEY, et al.,

Defendants.

No. 2:19-cv-1241 KJM KJN P

ORDER

Plaintiff is a state prisoner, proceeding without counsel. On March 20, 2020, plaintiff was ordered to show cause why the September 25, 2019 findings and recommendations should not be forwarded to the district court for review and adoption based on plaintiff's failure to timely file his amended complaint, as well as his failure to file an application to proceed in forma pauperis or pay the court's filing fee. On April 6, 2020, plaintiff filed a response, accompanied by his application to proceed in forma pauperis. Good cause appearing, the order to show cause is discharged, and the findings and recommendations are vacated. The late filing of plaintiff's amended complaint is excused.[1] The court will now screen plaintiff's first amended complaint.

[1] However, plaintiff is cautioned that in the future if he is unable to meet a court deadline, he must file a request for extension of time before the deadline expires. Plaintiff is entitled to benefit of the mailbox rule, meaning that plaintiff's documents are deemed filed when handed to prison staff for mailing, provided plaintiff submits a proof of service bearing the date he did so.

Plaintiff seeks relief pursuant to 42 U.S.C. § 1983, and has requested leave to proceed in forma pauperis pursuant to 28 U.S.C. § 1915. This proceeding was referred to this court by Local Rule 302 pursuant to 28 U.S.C. § 636(b)(1).

Plaintiff submitted a declaration that makes the showing required by 28 U.S.C. § 1915(a). Accordingly, the request to proceed in forma pauperis is granted.

Plaintiff is required to pay the statutory filing fee of $350.00 for this action. 28 U.S.C. §§ 1914(a), 1915(b)(1). By this order, plaintiff is assessed an initial partial filing fee in accordance with the provisions of 28 U.S.C. § 1915(b)(1). By separate order, the court will direct the appropriate agency to collect the initial partial filing fee from plaintiff's trust account and forward it to the Clerk of the Court. Thereafter, plaintiff is obligated to make monthly payments of twenty percent of the preceding month's income credited to plaintiff's trust account. These payments will be forwarded by the appropriate agency to the Clerk of the Court each time the amount in plaintiff's account exceeds $10.00, until the filing fee is paid in full. 28 U.S.C. § 1915(b)(2).

As discussed below, plaintiff's complaint is dismissed with leave to amend.

I. Screening Standards

The court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1), (2).

A claim is legally frivolous when it lacks an arguable basis either in law or in fact. Neitzke v. Williams, 490 U.S. 319, 325 (1989); Franklin v. Murphy, 745 F.2d 1221, 1227-28 (9th Cir. 1984). The court may, therefore, dismiss a claim as frivolous when it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless. Neitzke, 490 U.S. at 327. The critical inquiry is whether a constitutional claim, however inartfully pleaded, has an arguable legal and factual basis. See Jackson v. Arizona, 885 F.2d 639, 640 (9th Cir. 1989), superseded by statute as stated in Lopez v. Smith, 203 F.3d 1122, 1130-31 (9th Cir.

2000) ("[A] judge may dismiss [in forma pauperis] claims which are based on indisputably meritless legal theories or whose factual contentions are clearly baseless."); Franklin, 745 F.2d at 1227.

Rule 8(a)(2) of the Federal Rules of Civil Procedure "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555push (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). In order to survive dismissal for failure to state a claim, a complaint must contain more than "a formulaic recitation of the elements of a cause of action;" it must contain factual allegations sufficient "to raise a right to relief above the speculative level." Bell Atlantic, 550 U.S. at 555. However, "[s]pecific facts are not necessary; the statement [of facts] need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Erickson v. Pardus, 551 U.S. 89, 93 (2007) (quoting Bell Atlantic, 550 U.S. at 555, citations and internal quotations marks omitted). In reviewing a complaint under this standard, the court must accept as true the allegations of the complaint in question, Erickson, 551 U.S. at 93, and construe the pleading in the light most favorable to the plaintiff. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), overruled on other grounds, Davis v. Scherer, 468 U.S. 183 (1984).

II. Plaintiff's Allegations

Plaintiff alleges that while housed at the California Medical Facility ("CMF"), his rights were violated under the First, Eighth, and Fourteenth Amendments and the Americans with Disabilities Act. Initially, plaintiff names as defendants Warden Jared Lozano, Associate Warden Doe, Lt. Doe, Sgt. Doe custody, Lt. Doe custody, Watch Commander Doe, Correctional Officers Goforth, M. Jones (female Caucasian), McDonough, Townsend, Sgt. Rodriguez, and Does 1 - 15. (ECF No. 20 at 2.) Specifically, plaintiff requested defendant Lozano take "reasonable measures" to protect plaintiff from the Warden's subordinates, yet Lozano took no action to stop the "malicious and invidious retaliation and discrimination by his subordinates." (Id.) Defendant Lt. Doe advised defendant Goforth to not provide plaintiff a reasonable accommodation. (Id.)

////

Second, plaintiff names the following defendants in connection with plaintiff's medical claims: Defendant Warden Lozano; Dr. Usha Pai, Dr. Stephen Shaw, Dr. Bick, Dr. Ikegbu, Dr. Osman, Dr. Radding, Dr. DiTomas, Physician's Assistant Erica Ramirez, and Chief Medical Executive Lori Austin; SRN III's: Mulumba, Freeman, and Does 1 - 3; SRN II's: Weber, Reese, Scott, and McKinley; RN's Mabayan, Lulet, David, Igbee, Burton/Innes, Rayon, Champion, and Rani; LVN's Croy, Jessica Denis, Shika, and Gripe. Plaintiff sets forth a history of medical treatments, contending, inter alia, that he was deprived of appropriate antibiotics, subjected to unnecessary amputations of his toes, the failure to provide pain medication, as well as the cold-turkey removal of morphine.

Further, plaintiff alleges that on May 29, 2019, to October 2019, he was placed in imminent danger of physical harm due to heat related complications posed by the combination of heat and the psychotropic medications plaintiff was prescribed. Plaintiff contends these actions were taken by defendants Goforth and M. Jones in retaliation for plaintiff's complaints made against C/O Townsend, A.W. Hurley, Lt. Stephenson, Hall, and Sgt. Rodriguez. Plaintiff claims that defendant M. Jones refused to report temperatures over 90 degrees in the law library, which would have required her to provide plaintiff with ice. Plaintiff contends that defendants Goforth and M. Jones never enforced or obeyed the Coleman Remedial/Consent decrees. (ECF No. 20 at 10.)

Plaintiff also generally alleges that CDCR custody and administration continue to violate the Eighth Amendment and the Coleman Remedial plan by, inter alia, failing to have mental health evaluations for EOP and CCCMS level of care inmates through the disciplinary process. (ECF No. 20 at 10.)

Finally, plaintiff appears to argue that he should be excused from the administrative exhaustion requirement for various reasons. (ECF No. 20 at 10-11.)

III. Discussion

Plaintiff's complaint includes multiple unrelated claims against myriad defendants. Such disparate claims comprise a "shotgun" or "kitchen-sink" complaint, "complaints in which a plaintiff brings every conceivable claim against every conceivable defendant." Gurman v. Metro

Hous. & Redevelopment Auth., 842 F.Supp.2d 1151, 1153 (D. Minn. 2011) (fn. omitted). Therefore, the complaint does not comply with Federal Rule of Civil Procedure 20(a)(2), which provides that the right to relief against multiple defendants must arise out of common events and reflect common questions of law or fact. See George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007) ("[u]nrelated claims against different defendants belong in different suits."). In any amended complaint, plaintiff should limit his claims to those that arise from common questions of law or fact; alternatively, plaintiff may name a single defendant and bring as many claims as he has against that party, see Fed. R. Civ. P. 18(a).

IV. Plaintiff's Putative Claims

A. Fourteenth Amendment Due Process Claims

In his complaint, plaintiff alleges no facts supporting a Fourteenth Amendment due process claim. To the extent plaintiff alleges his due process rights were violated by the same facts underlying his claims under the First or Eighth Amendments, such Fourteenth Amendment claims are unavailing. "'[W]here a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims.'" County of Sacramento v. Lewis, 523 U.S. 833, 842 (1998) (quoting Albright v. Oliver, 510 U.S. 266, 273 (1994); Graham v. Connor, 490 U.S. 386, 395 (1989)). The Eighth Amendment supplies an explicit textual source of constitutional protection when an inmate is denied the right to be free from a knowing and intentional disregard of his safety. Therefore, the Eighth Amendment Cruel and Unusual Punishment Clause, and not the more general Fourteenth Amendment Due Process Clause, governs the constitutionality of defendants' actions. See Ramirez v. Groh, 298 F.3d 1022, 1029 (9th Cir. 2002) ("the Supreme Court has held that plaintiffs cannot 'double up' constitutional claims in this way.") The same is true for First Amendment claims. Plaintiff's due process claims should be dismissed. However, such dismissal is without prejudice to plaintiff filing an amended complaint if he can allege specific facts demonstrating that a defendant violated plaintiff's due process rights. See Fed. R. Civ. P. 15(a).

B. Standards Governing Plaintiff's Remaining Claims

Plaintiff is provided the following legal standards governing his remaining substantive claims.

1. First Amendment - Retaliation

"Prisoners have a First Amendment right to file grievances against prison officials and to be free from retaliation for doing so." Watison v. Carter, 668 F.3d 1108, 1114 (9th Cir. 2012) (citing Brodheim v. Cry, 584 F.3d 1262, 1269 (9th Cir. 2009)). A viable retaliation claim in the prison context has five elements: "(1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005).

2. Eighth Amendment Conditions of Confinement Claim[2]

In challenging conditions of confinement, the Eighth Amendment is violated when a prison official shows "deliberate indifference" to a "substantial risk of serious harm" or the "denial of the minimal civilized measure of life's necessities." Farmer v. Brennan, 511 U.S. 825, 834 (1994) (internal quotation marks omitted). Extreme deprivations are required to make out a conditions of confinement claim, and only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation. Hudson v. McMillian, 503 U.S. 1, 9 (1992) (citations and quotations omitted).

Challenge to the conditions of confinement involve a two-part inquiry. First, an inmate "must objectively show that he was deprived of something 'sufficiently serious.'" Foster v.

[2] In his complaint, plaintiff insists that this action was direct assigned to U.S. District Judge Kimberly J. Mueller, and plaintiff raises various allegations he claims demonstrates violations of the consent decree in Coleman v. Newsom, 2:90-cv-0520 KJM DB P (E.D. Cal.), a class action suit concerning mental health care in California state prisons. However, plaintiff is advised that Judge Mueller was not direct assigned to this case; rather, she was randomly assigned to this action by the Clerk's Office. E.D. L.R. App'x A (k)(3). In addition, this case is not related to the Coleman class action. To the extent plaintiff challenges the systemic provision of mental health care in prison, such claims are barred by Coleman, and must be pursued through the class counsel for the Coleman plaintiff class.

Runnels, 554 F.3d 807, 812 (9th Cir. 2009) (quoting Farmer, 511 U.S. at 832). Second, he must subjectively show that the prison official knew of and disregarded an excessive risk to inmate health or safety. See Farmer, 511 U.S. at 832. Thus, "a prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." Id. at 847.

3. Eighth Amendment Medical Claims

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments." U.S. Const. amend. VIII. The unnecessary and wanton infliction of pain constitutes cruel and unusual punishment prohibited by the Eighth Amendment. Whitley v. Albers, 475 U.S. 312, 319 (1986); Ingraham v. Wright, 430 U.S. 651, 670 (1977); Estelle v. Gamble, 429 U.S. 97, 105-06 (1976). Neither accident nor negligence constitutes cruel and unusual punishment, as "[i]t is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause." Whitley, 475 U.S. at 319.

If a prisoner's Eighth Amendment claim arises in the context of medical care, the prisoner must allege and prove "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle, 429 U.S. at 106. An Eighth Amendment medical claim has two elements: "the seriousness of the prisoner's medical need and the nature of the defendant's response to that need." McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled on other grounds by WMX Techs., Inc. v. Miller, 104 F.3d 1133 (9th Cir. 1997) (en banc).

A medical need is serious "if the failure to treat the prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" McGuckin, 974 F.2d at 1059 (quoting Estelle, 429 U.S. at 104). Indications of a serious medical need include "the presence of a medical condition that significantly affects an individual's daily activities." Id. at 1059-60. By establishing the existence of a serious medical need, a prisoner satisfies the objective requirement for proving an Eighth Amendment violation. Farmer, 511 U.S. at 834.

If a prisoner establishes the existence of a serious medical need, he must then show that prisoner officials responded to the serious medical need with deliberate indifference. See id. at

834.  In general, deliberate indifference may be shown when prison officials deny, delay, or intentionally interfere with medical treatment, or may be shown by the way in which prison officials provide medical care.  Hutchinson v. United States, 838 F.2d 390, 393-94 (9th Cir. 1988).

Before it can be said that a prisoner's civil rights have been abridged with regard to medical care, "the indifference to his medical needs must be substantial.  Mere 'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of action."  Broughton v. Cutter Laboratories, 622 F.2d 458, 460 (9th Cir. 1980) (citing Estelle, 429 U.S. at 105-06); see also Toguchi v. Chung, 391 F.3d 1051, 1057 (9th Cir. 2004) ("Mere negligence in diagnosing or treating a medical condition, without more, does not violate a prisoner's Eighth Amendment rights."); McGuckin, 974 F.2d at 1059 (same).  Deliberate indifference is "a state of mind more blameworthy than negligence" and "requires 'more than ordinary lack of due care for the prisoner's interests or safety.'"  Farmer, 511 U.S. at 835.

Delays in providing medical care may manifest deliberate indifference.  Estelle, 429 U.S. at 104-05.  To establish a claim of deliberate indifference arising from delay in providing care, a plaintiff must show that the delay was harmful.  See Hallett v. Morgan, 296 F.3d 732, 745-46 (9th Cir. 2002); Berry v. Bunnell, 39 F.3d 1056, 1057 (9th Cir. 1994); McGuckin, 974 F.2d at 1059.  In this regard, "[a] prisoner need not show his harm was substantial; however, such would provide additional support for the inmate's claim that the defendant was deliberately indifferent to his needs."  Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006).

4.  Americans with Disabilities Act ("ADA") Claim

Title II of the ADA, 42 U.S.C. §§ 12131 et seq., and § 504 of the Rehabilitation Act, as amended and codified in 29 U.S.C. § 701 et seq. ("RA"), prohibit discrimination on the basis of a disability in the programs, services or activities of a public entity.  Federal regulations require a public entity to "make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity."  28 C.F.R. § 35.130(b)(7).

The elements of a cause of action under Title II of the ADA are: (1) the plaintiff is an individual with a disability; (2) the plaintiff is otherwise qualified to participate in or receive the benefit of some public entity's services, programs, or activities; (3) the plaintiff was either excluded from participation in or denied the benefits of the public entity's services, programs or activities, or was otherwise discriminated against by the public entity; and (4) such exclusion, denial of benefits, or discrimination was by reason of the plaintiff's disability. Thompson v. Davis, 295 F.3d 890, 895 (9th Cir. 2002). A cause of action under § 504 of the RA essentially parallels an ADA cause of action. See Olmstead v. Zimring, 527 U.S. 581, 590 (1999); Duvall v. County of Kitsap, 260 F.3d 1124, 1135 (9th Cir. 2001).

Monetary damages are not available under Title II of the ADA absent a showing of discriminatory intent. See Ferguson v. City of Phoenix, 157 F.3d 668, 674 (9th Cir. 1998). To show discriminatory intent, a plaintiff must establish deliberate indifference by the public entity. Duvall, 260 F.3d at 1138. Deliberate indifference requires: (1) knowledge that a harm to a federally protected right is substantially likely, and (2) a failure to act upon that likelihood. Id. at 1139. The first prong is satisfied when the plaintiff identifies a specific, reasonable and necessary accommodation that the entity has failed to provide, and the plaintiff notifies the public entity of the need for accommodation or the need is obvious or required by statute or regulation. Id. The second prong is satisfied by showing that the entity deliberately failed to fulfill its duty to act in response to a request for accommodation. Id. at 1139-40. Punitive damages may not be awarded in suits brought under Title II of the ADA. Barnes v. Gorman, 536 U.S.181, 189 (2002).

V. Exhaustion of Administrative Remedies

As noted above, plaintiff asks the court to excuse the exhaustion of administrative remedies, but the factual basis for his request is unclear. Plaintiff refers to "underground regulations," claims he never received a copy of Title 15, and appears to contend that he had no physical access to Health Care regulations, policies or procedures at CMF. It is unclear whether plaintiff failed to pursue administrative remedies as to all of his claims, or whether some of his appeals were denied and he was unable to pursue such appeals to the third level of review.

////

However, the failure to exhaust administrative remedies is "an affirmative defense the defendant must plead and prove." Jones v. Bock, 549 U.S. 199, 204 (2007). It is the defendant's burden to prove that there was an available administrative remedy, and that the prisoner failed to exhaust that remedy. Albino v. Baca, 747 F.3d 1162, 1172 (9th Cir. 2014) (*en banc*). Thus, plaintiff is not required to address, in his amended complaint, whether the administrative grievance process was rendered unavailable. Rather, such argument is more appropriately included in an opposition to a dispositive motion filed by a defendant.

Nevertheless, in an abundance of caution, and in the event plaintiff may not have attempted to pursue an administrative grievance as to a particular claim before raising it in federal court, plaintiff is advised of the following standards governing the exhaustion of administrative remedies.

Claims challenging the conditions of confinement are subject to the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a). "The PLRA mandates that inmates exhaust all available administrative remedies before filing 'any suit challenging prison conditions,' including, but not limited to, suits under § 1983." Albino v. Baca, 747 F.3d 1162, 1171 (9th Cir. 2014) (quoting Woodford v. Ngo, 548 U.S. 81, 85 (2006)). The Supreme Court has held that courts may not excuse an inmate's failure to exhaust administrative remedies prior to bringing suit under the PLRA, even to take into account "special" circumstances. Ross v. Blake, 136 S. Ct. 1850 (2016).

An action is subject to dismissal and plaintiff may not proceed in this action if he has not exhausted his administrative remedies prior to filing suit. See, e.g., Albino, 747 F.3d at 1162 (in rare cases where a failure to exhaust is clear from the face of the complaint, it may be dismissed for failure to state a claim); Bennett, 293 F.3d at 1098; Medina v. Sacramento Cty. Sheriff's Dep't, 2016 WL 6038181, at *3 (E.D. Cal. Oct. 14, 2016) ("When it is clear from the face of the complaint and any attached exhibits that a plaintiff did not exhaust his available administrative remedies before commencing an action, the action may be dismissed on screening for failure to state a claim.") Regardless of the relief sought, a prisoner must exhaust administrative remedies before filing in federal court. Booth v. Churner, 532 U.S. 731, 736, 741 (2001); Ross, 136 S. Ct.

at 1857, 1859. In other words, exhaustion is a precondition to suit; exhaustion while the action is pending is insufficient. McKinney v. Carey, 311 F.3d 1198, 1199-1200 (9th Cir. 2002). This requirement promotes the PLRA's goal of efficiency by: "(1) 'giv[ing] prisoners an effective incentive to make full use of the prison grievance process'; (2) reducing prisoner suits as some prisoners are 'persuaded by the proceedings not to file an action in federal court'; and (3) improving the quality of any remaining prisoner suits 'because proper exhaustion often results in the creation of an administrative record that is helpful to the court.'" Nunez v. Duncan, 591 F.3d 1217, 1226 (9th Cir. 2010) (quoting Woodford v. Ngo, 548 U.S. at 94-95).

"Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules." Woodford, 548 U.S. at 90. These rules are defined by the prison grievance process itself, not by the PLRA. Jones v. Bock, 549 U.S. 199, 218 (2007). "[A] prisoner must 'complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a precondition to bringing suit in federal court.'" Harvey v. Jordan, 605 F.3d 681, 683 (9th Cir. 2010) (quoting Marella v. Terhune, 568 F.3d 1024, 1027 (9th Cir. 2009)). In California, a grievance must be timely appealed through the third level of review to complete the administrative review process. Harvey, 605 F.3d at 683; Cal. Code Regs. tit. 15, § 3084.1(b). The State of California provides its inmates and parolees the right to administratively appeal ''any policy, decision, action, condition, or omission by the department or its staff that the inmate or parolee can demonstrate as having a material adverse effect upon his or her health, safety, or welfare.'' Cal. Code Regs. tit. 15, § 3084.1(a). In order to exhaust available administrative remedies, a prisoner must proceed through three formal levels of appeal and receive a decision from the Secretary of the CDCR or his designee. Id. § 3084.1(b), § 3084.7(d)(3).

The amount of detail in an administrative grievance necessary to properly exhaust a claim is determined by the prison's applicable grievance procedures. Jones, 549 U.S. at 218; see also Sapp v. Kimbrell, 623 F.3d 813, 824 (9th Cir. 2010) (''To provide adequate notice, the prisoner need only provide the level of detail required by the prison's regulations''). California prisoners are required to lodge their administrative complaint on a CDCR-602 form (or a CDCR-602 HC form for a health-care matter). The level of specificity required in the appeal is described in a

regulation:

> The inmate or parolee shall list all staff member(s) involved and shall describe their involvement in the issue. To assist in the identification of staff members, the inmate or parolee shall include the staff member's last name, first initial, title or position, if known, and the dates of the staff member's involvement in the issue under appeal. If the inmate or parolee does not have the requested identifying information about the staff member(s), he or she shall provide any other available information that would assist the appeals coordinator in making a reasonable attempt to identify the staff member(s) in question. [¶] The inmate or parolee shall state all facts known and available to him/her regarding the issue being appealed at the time of submitting the Inmate/Parolee Appeal form, and if needed, the Inmate/Parolee Appeal Form Attachment.

Cal. Code Regs. tit. 15, § 3084.2(a)(3-4). An inmate has thirty calendar days to submit his or her appeal from the occurrence of the event or decision being appealed, or "upon first having knowledge of the action or decision being appealed." Cal. Code Regs. tit. 15, § 3084.8(b).

The Ninth Circuit has recognized that the PLRA does not require exhaustion when circumstances render administrative remedies "effectively unavailable." Andres v. Marshall, 867 F.3d 1076, 1078 (9th Cir. 2017) (citing Nunez v. Duncan, 591 F.3d at 1226). In Ross, the Supreme Court agreed, holding that § 1997e(a) requires an inmate to exhaust only those grievance procedures "that are capable of use to obtain some relief for the action complained of." Ross, 136 S. Ct. 1850, 1859 (2016) (citation and internal quotation marks omitted). Andres, 867 F.3d at 1078. Nevertheless, the Supreme Court reinforced the exhaustion requirement:

> [T]hat language is "mandatory": An inmate "shall" bring "no action" (or said more conversationally, may not bring any action) absent exhaustion of available administrative remedies. . . . [T]hat edict contains one significant qualifier: the remedies must indeed be "available" to the prisoner. But aside from that exception, the PLRA's text suggests no limits on an inmate's obligation to exhaust -- irrespective of any "special circumstances."

Ross, 136 S. Ct. at 1856 (internal citations omitted).

VI. Leave to Amend

As discussed above, plaintiff's complaint must be dismissed. The court, however, grants leave to file an amended complaint.

If plaintiff chooses to amend the complaint, plaintiff must demonstrate how the conditions about which he complains resulted in a deprivation of plaintiff's constitutional rights. See e.g.,

West v. Atkins, 487 U.S. 42, 48 (1988). Also, the complaint must allege in specific terms how each named defendant is involved. Rizzo v. Goode, 423 U.S. 362, 371 (1976). There can be no liability under 42 U.S.C. § 1983 unless there is some affirmative link or connection between a defendant's actions and the claimed deprivation. Rizzo, 423 U.S. at 371; May v. Enomoto, 633 F.2d 164, 167 (9th Cir. 1980). Furthermore, vague and conclusory allegations of official participation in civil rights violations are not sufficient. Ivey v. Bd. of Regents, 673 F.2d 266, 268 (9th Cir. 1982).

Plaintiff may not change the nature of this suit by alleging new, unrelated claims. George, 507 F.3d at 607. Plaintiff may not bring unrelated claims against multiple defendants. Id. A "shotgun" or "scattershot" approach naming unrelated claims against multiple defendants is not acceptable.

The federal rules contemplate brevity. See Galbraith v. County of Santa Clara, 307 F.3d 1119, 1125 (9th Cir. 2002) (noting that "nearly all of the circuits have now disapproved any heightened pleading standard in cases other than those governed by Rule 9(b)."); Fed. R. Civ. P. 84; cf. Rule 9(b) (setting forth rare exceptions to simplified pleading). Plaintiff's claims must be set forth in short and plain terms, simply, concisely and directly. See Swierkiewicz v. Sorema N.A., 534 U.S. 506, 514 (2002) ("Rule 8(a) is the starting point of a simplified pleading system, which was adopted to focus litigation on the merits of a claim."); Fed. R. Civ. P. 8. Plaintiff must eliminate from plaintiff's pleading all preambles, introductions, argument, speeches, explanations, stories, griping, vouching, evidence, attempts to negate possible defenses, summaries, and the like. McHenry v. Renne, 84 F.3d 1172, 1180 (9th Cir. 1996) (affirming dismissal of § 1983 complaint for violation of Rule 8 after warning); see Crawford-El v. Britton, 523 U.S. 574, 597 (1998) (reiterating that "firm application of the Federal Rules of Civil Procedure is fully warranted" in prisoner cases). The court (and defendant) should be able to read and understand plaintiff's pleading within minutes. McHenry, 84 F.3d at 1177. A long, rambling pleading, including many defendants with unexplained, tenuous or implausible connection to the alleged constitutional injury or joining a series of unrelated claims against many defendants very

////

likely will result in delaying the review required by 28 U.S.C. § 1915 and an order dismissing plaintiff's action pursuant to Fed. R. Civ. P. 41 for violation of these instructions.

In an effort to assist plaintiff in linking the named defendant with the alleged violation, he is required to file his amended complaint on the court's form complaint.

Plaintiff is not required to address the issue of exhaustion of administrative remedies in his amended complaint, and shall not include arguments concerning administrative exhaustion.

In addition, plaintiff is informed that the court cannot refer to a prior pleading in order to make plaintiff's amended complaint complete. Local Rule 220 requires that an amended complaint be complete in itself without reference to any prior pleading. This requirement exists because, as a general rule, an amended complaint supersedes the original complaint. See Ramirez v. County of San Bernardino, 806 F.3d 1002, 1008 (9th Cir. 2015) ("an 'amended complaint supersedes the original, the latter being treated thereafter as non-existent.'" (internal citation omitted)). Once plaintiff files an amended complaint, the original pleading no longer serves any function in the case. Therefore, in an amended complaint, as in an original complaint, each claim and the involvement of each defendant must be sufficiently alleged.

In accordance with the above, IT IS HEREBY ORDERED that:

1. The order to show cause (ECF No. 22) is discharged.

2. The findings and recommendations (ECF No. 15) are vacated.

3. Plaintiff's request for leave to proceed in forma pauperis is granted.

4. Plaintiff is obligated to pay the statutory filing fee of $350.00 for this action. Plaintiff is assessed an initial partial filing fee in accordance with the provisions of 28 U.S.C. § 1915(b)(1). All fees shall be collected and paid in accordance with this court's order to the Director of the California Department of Corrections and Rehabilitation filed concurrently herewith.

5. Plaintiff's complaint is dismissed.

6. Within thirty days from the date of this order, plaintiff shall complete the attached Notice of Amendment and submit the following documents to the court:

a. The completed Notice of Amendment; and

b. An original and one copy of the Amended Complaint.

Plaintiff's amended complaint shall comply with this order, the requirements of the Civil Rights Act, the Federal Rules of Civil Procedure, and the Local Rules of Practice. The amended complaint must be filed on this court's complaint form, bear the docket number assigned to this case and be labeled "Amended Complaint."

Failure to file an amended complaint in accordance with this order may result in the dismissal of this action.

7. The Clerk of the Court is directed to send plaintiff the form for filing a civil rights complaint by a prisoner.

Dated: June 10, 2020

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

/diaz1241.scr

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MIGUEL ENRIQUE DIAZ,<br>Plaintiff,<br>v.<br>ASSOCIATE WARDEN HURLEY, et al.,<br>Defendants. | No. 2:19-cv-1241 KJM KJN P<br><br>NOTICE OF AMENDMENT |

Plaintiff hereby submits the following document in compliance with the court's order filed______________.

______________ Amended Complaint on the Court's Form

DATED:

________________________________
Plaintiff